1 | JENNER & BLOCK LLP
2 | Richard L. Stone (SBN 110022)
  | rstone@jenner.com
3 | Julie A. Shepard (SBN 175538)
  | jshepard@jenner.com
4 | 633 West 5th Street, Suite 3600
  | Los Angeles, CA 90071
5 | Telephone:213-239-5100
6 | Facsimile: 213-239-5199

7 | Attorneys for Plaintiffs
  | WNET, THIRTEEN, Fox Television Stations, Inc.,
8 | Twentieth Century Fox Film Corporation,
9 | WPIX, Inc., Univision Television Group, Inc.,
  | The Univision Network Limited Partnership, and
10 | Public Broadcasting Service

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SANTA CLARA DIVISION

| WNET, THIRTEEN, Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, WPIX, Inc., Univision Television Group, Inc., The Univision Network Limited Partnership, and Public Broadcasting Service | Case No. 5:12-mc-80300-RMW |
|---|---|
|  | **WNET PLAINTIFFS' OPPOSITION TO AEREO'S MOTION TO QUASH** |
|  | [Declaration of Julie A. Shepard filed concurrently herewith] |
| Plaintiffs, | Date: February 5, 2013 |
| v. | Time: 10:00 AM |
|  | Ctrm: 5, 4th Floor |
| Aereo, Inc., f/k/a Bamboom Labs, Inc. | Magistrate Judge: Paul S. Grewal |
| Defendant. |  |

WNET PLAINTIFFS' OPPOSITION TO AEREO'S MOTION TO QUASH

2167502.4

## I. Introduction

Aereo's Motion to Quash the Subpoena served upon Google Inc. by Plaintiffs,[1] should be denied. Aereo lacks standing to move this Court to quash the Subpoena on the basis of undue burden. To the extent Aereo has standing, it is only to move to quash or modify the Subpoena based on the sensitive trade information that it claims will be exposed by production responsive to the Subpoena. This information is already protected by the Protective Order existing in the underlying action, and Aereo has made no showing why this Protective Order is insufficient to protect its interests.

## II. Statement of Issues to be Decided

Whether Plaintiffs' Subpoena served on Google should be quashed under Federal Rule of Civil Procedure 45 where the two asserted grounds for quashing the Subpoena are undue burden and confidentiality and (a) Aereo, the moving party, has no standing to assert burden and submits no evidence of undue burden on Google in producing the admittedly relevant information sought by the Subpoena and, (b) a two-tiered protective is already in place to protect any of Aereo's confidential and propriety information produced pursuant to the Subpoena.

## III. Background

Plaintiffs in this litigation are the exclusive owners and broadcasters of copyrighted television programming that is broadcast over the air in the New York metropolitan area. Plaintiffs have never provided any license to Aereo to perform or reproduce their copyrighted works. Nonetheless, on March 14, 2012, Aereo launched its subscription-based, live television retransmission service, a business based entirely on the unauthorized retransmission and reproduction of Plaintiffs' copyrighted content. For a monthly fee, Aereo provides its subscribers with live or recorded transmissions of Plaintiffs' broadcasts

---

[1] Plaintiffs consist of WNET, THIRTEEN, Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, WPIX, Inc., Univision Television Group, Inc., The Univision Network Limited Partnership, and Public Broadcasting Service.

to any Internet-connected device.  Because commercial services which retransmit over-the-air broadcasts must have a license, Aereo has attempted to distinguish what it does from television service providers such as cable and satellite companies, which have licenses to retransmit Plaintiffs' programming.  Indeed, Aereo takes great pains to portray itself as "just a technology company" that "rents" equipment to subscribers.  But this is all fiction.  Aereo takes Plaintiffs' broadcast signals, manipulates them for retransmission over the Internet, and retransmits them to Aereo's subscribers for a fee.  This is the same thing satellite companies do via satellite and cable companies do via cable.  Aereo's goal is for people to "cut the cord" so to speak and cancel their cable subscriptions and switch to Aereo to watch television.

In March 2012, Plaintiffs brought suit in the Southern District of New York against Aereo for infringement of the Plaintiff television broadcasting companies' copyrights, including claims of infringement of Plaintiffs' public performance and reproduction rights.  *WNET v. Aereo, Inc.*, No. 12-cv-1543 (S.D.N.Y. filed Mar. 1, 2012) (Nathan, J.).[2]  Plaintiffs allege both direct and secondary liability for infringement.  And, Aereo has asserted, among other things, fair use as one of its defenses.

In May, Plaintiffs moved for preliminary injunction on their public performance right claim only, after a couple month period of limited, expedited discovery.  During this period, Plaintiffs and Aereo entered into a two-tiered Protective Order governing the treatment to be given to sensitive proprietary information that would be produced in the course of the litigation.  See Ex. A to Chan Aff., Amended Stipulated Protective Order.  As Aereo acknowledged, Aereo produced its source code and other highly sensitive technical documents subject to that Protective Order without objection.  Aereo's Mot., p. 3.  And, the Protective Order remains in place.

The District Court eventually denied Plaintiffs' motion for preliminary injunction,

---

[2]  A second group of Plaintiffs filed a related case against Aereo, *American Broadcasting Companies v. Aereo, Inc.*, No. 12-cv-1540-AJN (S.D.N.Y. filed Mar. 1, 2012).  The cases have been consolidated.

and expedited appeal was taken to the Second Circuit.  While the Second Circuit's decision is outstanding, the litigation continues to progress at the District Court with fact discovery currently set to close on February 22, 2013.

As the parties had not previously taken discovery on the reproduction claims at all, much of the discovery served once fact discovery was re-opened in September has focused on Plaintiffs' reproduction right claims.  But, despite Aereo's intimation to the contrary, the District Court did not limit discovery when it was re-opened.  The clearest sign of that is Aereo's 92 document requests to Plaintiffs.

### IV.  Argument

There is no basis under Rule 45 for this Court to quash the Subpoena.  As an initial matter, Aereo lacks standing to ask this Court to quash the Subpoena on the basis that the Subpoena is allegedly unduly burdensome on Google.  A court may to quash a subpoena that subjects a person to undue burden, Fed. R. Civ. P. 45(c)(3)(A)(iv), but Aereo is not subjected to any burden by the Subpoena, as the Subpoena is not directed to Aereo.  Further, there is minimal, if any, burden on Google to produce the requested documents and information, which are admittedly relevant.  And, while Aereo has standing to object on the basis that its proprietary information is being produced, that objection is frivolous here where there is a strong Protective Order in place and both Aereo and Plaintiffs have produced much more competitively sensitive and proprietary information under the Protective Order (e.g., source code, technical information, highly confidential agreements) than the materials requested in the Subpoena.

#### A.  Aereo Lacks Standing to Move to Quash the Subpoena on the Basis of Undue Burden to Google.

Aereo lacks standing to move to quash this Subpoena on the grounds of undue burden because it is not the subject of the Subpoena.  "A party's objection that the subpoena issued to the non-party seeks irrelevant information or imposes an undue burden on the non-party are not grounds on which a party has standing to move to quash a

subpoena issued to a non-party, especially where the non-party, itself, has not objected." *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148, at *3 (D. Nev. Jan. 9, 2007); *see, e.g.*, *Kremen v. Cohen*, No. C11–05411 LHK (HRL), 2012 WL 2277857, at *3 (N.D. Cal. June 18, 2012) (finding moving party lacked standing to move to withdraw subpoenas based on alleged violation of rights of third parties where the subpoenaed parties themselves had not moved to quash, modify, or withdraw the subpoenas). As the burden of proof for showing that a subpoena is burdensome rests with the party to whom the subpoena is directed, *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966), a party who is not the subject of the subpoena cannot possibly complain of the burden allegedly imposed, *Third Degree Films, Inc. v. Does 1-118*, Civ. A. No. 11-cv-03006, 2011 WL 6837774, at *3 (D. Md. Dec. 28, 2011) (denying motion to quash based on undue burden "because the subpoena … does not require [movant] to produce any information or otherwise respond"). Moreover, "[t]he third parties themselves are in the best position to negotiate with the requesting party and, if necessary, raise their own objections pursuant to … Fed. R. Civ. P. 45(c)." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, No. 8:06CV458, 2009 WL 1562851, at *3 (D. Neb. June 1, 2009).

This is so even if the movant has standing under Rule 45 to bring a motion to quash a subpoena on the basis of an asserted privacy right or personal interest. *See Pub. Serv. Co. of Okla. v. A Plus, Inc.*, No. Civ-10-651-D, 2011 WL 691204, at *5 (W.D. Okla. Feb. 16, 2011) (defendants lacked standing to challenge subpoenas directed to third-parties on the basis that the subpoenas are unduly burdensome, even where party had standing to challenge the subpoena on privacy or privilege grounds); *Keybank Nat'l Ass'n v. Perkins Rowe Assocs., L.L.C.*, Civ. A. No. 09-497-JJB-SR, 2011 WL 90108, at *2 (M.D. La. Jan. 11, 2011) (defendants had standing to challenge third-party subpoenas seeking the defendants' private bank records, but lacked standing to challenge other third-party subpoenas on grounds of relevance or undue burden to the subpoenaed non-party). A

party who does not have standing to quash a subpoena based on undue burden on the non-party may, nonetheless, have standing to seek a protective order based on the party's claimed personal interest. *Wells Fargo & Co. v. ABD Ins.*, No. C 12-03856 PJH (DMR), 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012). Because there is already a Protective Order in operation in the underlying litigation, there is simply no further remedy Aereo might need to protect its interests with respect to a third-party subpoena.

### B. Even if Aereo Had Standing, the Subpoena is Not Unduly Burdensome; It Seeks Relevant Documents that are Not Duplicative.

Even if this Court were to find that Aereo does have standing to challenge the Subpoena as unduly burdensome, this argument is without merit and Aereo's motion should be denied. In considering the issue of whether undue burden is imposed by a subpoena, courts balance the burden imposed, as well as the relevance and the parties' need for the information. *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).

Here, Aereo has provided absolutely no evidence of any burden that Google would be subject to, were it to comply with the Subpoena, but has merely proffered an affidavit from counsel, who does *not* represent Google, detailing certain facts relating to *Aereo*'s production of documents, *not* Google's burden. Indeed, Google has not actually declined to produce these materials, but only set forth pro forma objections as a placeholder until Aereo responded to the Subpoena. In fact, Google has relayed to Plaintiffs' counsel its willingness to produce documents in response to the Subpoena if Aereo did not object. *See* Shepard Decl. ¶ 3. Tellingly, Google has not submitted a declaration to support Aereo's motion.

Aereo tries to sidestep its inability to show burden by trying to create the impression that Plaintiffs will get the same documents from Aereo by claiming the Subpoena seeks "duplicative" information. It does not. First, notably, Aereo's declaration does not directly say that it has produced these same documents. It has not. A

search for "Adword" and "Google" through Aereo documents did not reveal Aereo's AdWords purchases.  Shepard Decl. ¶ 4.  Second, Aereo is being disingenuous when it implies that the database information that Plaintiffs have requested from Aereo regarding how Aereo's subscribers use Aereo's service is the same information that Google tracks with Google Analytics.  Aereo's Mot., p. 3.  It is not.  Aereo's database tracks such things as which programs Aereo subscribers watch or record, and when they watch them.  In contrast, Google's reports track which non-Aereo websites deliver traffic to the Aereo website, and what types of searches users run to get to the Aereo website.  The Google reports will also provide aggregated data about access to Aereo web pages by Aereo users from outside the New York metropolitan viewing area, which is relevant to the market harm suffered by Plaintiffs.  *See WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 618, 620 (S.D.N.Y. 2012) (finding irreparable harm to be inflicted on broadcaster plaintiffs by the ivi service "because viewers will be able to watch stations outside of their geographic area," and "[b]y diverting customers who would otherwise watch their local stations, [ivi was] weakening plaintiffs' negotiating position with advertisers"); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (affirming same).  This data may exist in Aereo's raw web server logs that Aereo has obtained from Google, but even Aereo is unlikely to look there for it.  Indeed, this is the very reason that Aereo uses Google Analytics; Google Analytics collects data regarding Aereo site usage, at Aereo's direction, and provides a reporting interface for the data that is immensely more useful.  Data obtained from Google Analytics is by far the most convenient source for information such as traffic sources to the Aereo site.  Moreover, there is no guarantee that the resulting product from Google will be captured by Aereo's files.  Even if Aereo looked at the Google Analytics reports that were provided to them, it is not necessarily the case that they would have saved or printed that documentation in any consistent or systematic way.

     To the extent that there is any overlap between the documents Plaintiffs have requested from Aereo and those requested from Google, Plaintiffs are entitled to seek

discovery from Google to verify any similar information provided by Aereo. *See, e.g.*, *Knoll, Inc. v. Moderno, Inc.*, No. C 12-80193-MISC SI, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012) (finding plaintiffs entitled to documents requested from Google despite defendant's claim that the documents requested had already been produced to plaintiff where defendant's affidavit supporting its position did not lay a foundation for the claim that the requested documents had been fully and completely produced to plaintiff). While Aereo's discovery requests relating to their marketing strategies and ad campaigns was due on October 29, 2012, Aereo has still not completed production of this material to Plaintiffs. With discovery set to close on February 22, Plaintiffs have little reason to be confident that they will ever receive the necessary information. Also, Plaintiffs have come across documents from other third parties who have been subpoenaed in connection with this litigation, which Aereo should have had but did not produce, even though they were responsive to Plaintiffs' document requests. *See* Shepard Decl. ¶ 5. The Subpoena merely seeks the requested information in a most complete and reliable format.

     For all of the above reasons, there is no burden to be balanced against the clear relevance of the requested information and documents. Indeed, while Aereo makes a pro forma relevance argument in its burden section, Aereo cannot escape that it has conceded the relevancy of marketing and consumer behavior information sought by the Subpoena. Aereo represented to this Court that Aereo has agreed to produce some of the documents in Aereo's possession on these topic. Aereo's Mot., p. 6. Specifically, Aereo has promised that it will produce documents relating to its marketing strategies. It cannot now claim that this related information about the Google AdWords purchased to implement its marketing strategies or Google's tracking of the effectiveness of this marketing is somehow irrelevant.

     Even without Aereo's concession, the relevance of the information sought by the Subpoena to Plaintiffs' claims and Aereo's defenses is manifest. The requested

information relates primarily to how Aereo is marketing itself and bears directly on the issue of the impacted markets and market harm, which is a critical factor in Aereo's asserted fair use defense.  The fourth fair use factor considers "whether unrestricted and widespread conduct of the sort engaged in by [Aereo] would result in a substantially adverse impact on the potential market" for Plaintiffs' works.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (quotation marks omitted).   Here, the AdWords purchases will likely confirm that Aereo is marketing itself as an alternative to both cable and satellite services as well as other Internet services, and not just an "equipment" provider.  They will also likely confirm that Aereo is encouraging cord cutting, a direct indication of market harm.  *See, e.g.*, Tom Cheredar, "Aereo's assault on old-school 'pay TV' continues with 22 new cities & $38M round," VentureBeat, Jan. 8, 2013, available at http://venturebeat.com/2013/01/08/aereo-expanding-22-cities/.

Further, the requested advertising reports (the Google Analytic reports) will reveal the performance and history of Aereo's marketing campaigns.  Consumer behavior and response are critical considerations when a fair use defense is asserted.  These documents will also show how Aereo has marketed its service and are different from those documents Aereo itself will have in its possession.  Google's reports on traffic sources will likewise help Plaintiffs understand which websites deliver traffic to the Aereo website, and what types of searches users run to get there.  And, as discussed above, the Google reports will provide aggregated data about access to Aereo web pages by Aereo users from outside the New York metropolitan viewing area.  All of this information reflects the way Aereo presents its service to the public and how consumers respond.  It is important to note that Plaintiffs are not looking for raw data that would be difficult for Google to extract, but are rather asking for the reports that are generated through the normal Google Analytics interface, and should be easy to produce.   This explains why there is no declaration from Google attesting to any undue burden.  To the extent this Court nonetheless has outstanding questions as to the relevancy of the documents and

information sought through the Subpoena, it should err on the side of permitting the discovery, particularly here where Aereo has admitted the relevance of marketing information and no evidence of burden on Google has been presented. *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335 (N.D. Cal. 1995) ("A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder.  Where relevance is in doubt . . . the court should be permissive.") (quoting *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987) (internal quotation marks omitted; ellipsis in original)).  Given the clear relevancy to Plaintiffs' claims and Aereo's complete lack of evidence as to the burden that will be placed on Google if it complies with the Subpoena, Aereo's motion should be denied.

### C. Any Sensitive Trade Information Belonging to Aereo is Sufficiently Covered by the Protective Order in Operation in the Underlying Litigation.

In deciding whether to quash a subpoena based on the need to protect sensitive information, "the Court also considers whether a protective order will address the asserted privacy concerns." *Knoll,* 2012 WL 4466543, at *2 (citing *Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987)).  "Generally, 'the selective disclosure of protectable trade secrets is not per se unreasonable and oppressive, when appropriate protective measures are imposed.'"  *Gonzales*, 234 F.R.D. at 686-87  (quoting *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1025 (Fed. Cir. 1986)).

In short, Aereo's argument regarding its commercial information is frivolous.  There is a strong Protective Order already in operation in the underlying litigation, which was provided to Google as an attachment to Plaintiffs' Subpoena.  *See* Ex. A to Chan Aff., Amended Stipulated Protective Order.  Parties and third parties like Google may designate documents as "Confidential" or "Highly Confidential."  *Id.*, ¶¶ 2, 3, 13.  Documents marked "Highly Confidential" cannot be shown to any business person of the parties and

access is limited to three in-house counsel.  *Id.*, ¶¶ 3, 14.  The Protective Order also includes a pre-disclosure requirement for experts and consultants, such that no confidential documents may be shown to them before the opposing party has an opportunity to object.  *Id.*, ¶ 16.

Under the Protective Order, Aereo has produced all of its source code, extensive technical documentation, and service usage data.  Aereo has even produced a physical copy of its antenna board.  This technical discovery was produced in relation to Plaintiffs' public performance claim without incident.  Plaintiffs should not be hindered in pursuit of their reproduction right claim based on a baseless allegation that the Protective Order—sufficient for prior purposes—is now somehow insufficient to protect Aereo's commercial information.  Notably, Aereo has not even endeavored to explain why the Protective Order is suddenly insufficient to protect its interests.  Under these circumstances, Aereo's motion to quash the Subpoena should be denied.  Indeed, this Court recently denied a similar motion to quash a subpoena served on Google where the defendant moving to quash failed to demonstrate that the protective order in the underlying litigation would not sufficiently address the defendant's asserted privacy interests.  *Knoll,* 2012 WL 4466543, at *2.  The same should be done here.

**V.    Conclusion**

For the reasons set forth above, Aereo's Motion to Quash the Subpoena should be denied.

Dated: January 9, 2013                                          JENNER & BLOCK LLP

                                                                By:        /s/ Julie Shepard
                                                                        JULIE A. SHEPARD

                                                                Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

United States District Court for the Northern District of California

Case No. 5:12-mc-80300-RMW

I am a citizen of the United States and resident of the State of California. I am employed in Los Angeles County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years and not a party to the within action.

On January 9, 2013, I served the following documents in the manner described below:

1. **WNET PLAINTIFFS' OPPOSITION TO AEREO'S MOTION TO QUASH**
2. **DECLARATION OF JULIE A. SHEPARD IN SUPPORT OF WNET PLAINTIFFS' OPPOSITION TO AEREO'S MOTION TO QUASH**

☑ BY ELECTRONIC SERVICE: By electronically filing with the Clerk of the Court using CM/ECF service which will provide notice to all counsel of record registered to receive CM/ECF notification in captioned case, and constitutes service under Civil L. R. 5-1(h)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 9, 2013, at 633 West 5th Street, Suite 3600, Los Angeles, CA 90071:

_/s/ Jessica C. Salazar Garcia_
Jessica C. Salazar Garcia